### WILLIAM A. TYLER

### v.

### JOHN B. TYLER.

*Trusts—Creation of—Words—Real and Personal Property—Fraudu-lent Conveyances to Trustee—Constructive and Express Trusts—When Equity Will Execute—Fraud as a Defense—Husband and Wife—Convey-ance to Defraud Wife.*

1.  No particular form of words is necessary to create a trust or to make the person declaring the trust a trustee.   Where a person orally or in writing explicitly or impliedly declares that he holds personal  property *in presenti* for another, such declaration constitutes him a trustee of such  property in an expressed trust for such other person.   The same  principles of construc-tion apply to a declaration of a trust in real  property, except that such dec-laration must be in writing.

2.  Where  either personal or real property is held in trust, the beneficial interest in  the property is vested in the *cestui que trust* and he is  entitled to the aid of a court of chancery to enforce the trust.

3.  The court will not refuse to  enforce  an  express trust for the reason that the conveyance to the trustee, who has declared the trust, was to delay, hinder and defraud  the  grantor's  wife in obtaining alimony and  mainte-nance in a suit which it was apprehended she was about to commence.

4.  A secret trust is one that is constructive as  distinguished from one that is expressed.

5.  A court of chancery will *not* execute a secret trust in  behalf of the fraudulent grantor, because equity will not construct a trust upon a basis of fraud, but equity will enforce an express trust if well created.   The trustee can not revoke a beneficial interest which by his own act has vested, by set-ting up a fraud in which he has participated.

6.  It *seems* that a transfer of property, real and personal, made to defeat or hinder a wife from obtaining support or alimony, is subject to the same rules as if made to hinder and defraud creditors.

[Opinion filed February 1, 1888.]

APPEAL from the Superior Court of Cook County ; the Hon. GWYNN GARNETT, Judge, presiding.

Messrs. HUTCHINSON & LUFF, for appellant.

Messrs. ROBERTS, HUTCHINSON & THOMAS, for appellee.

He who comes into a court of equity must come with clean hands, and a court of equity will not interfere in behalf of a fraudulent grantor. Dunaway v. Robertson, 95 Ill, 419; Ryan v. Ryan, 97 Ill. 38; Miller v. Marckle, 21 Ill. 152. ·

In Phelps v. Curtis, 80 Ill. 109, it was held not necessary to render conveyance fraudulent that there should have been any actual defrauding of creditors intended. It is sufficient if there was a purpose to place it beyond their reach for the time being. Citing Nesbit v. Digby, 13 Ill. 387; Fitzgerald v. Forristal, 48 Ill. 228.

It is not necessary that the intention or purpose should be to actually defraud the wife. It is sufficient if the purpose was to place property beyond her reach for the time being. Phelps v. Curts, 80 Ill. 109.

A conveyance fraudulent in part is fraudulent *in toto*. Ward v. Enders, 29 Ill. 519; Russell v. Warner, 37 N. Y. 591; McQuade v. Rosencranz, 36 O. S. 442; Mitchell v. Beale, 8 Yerg. 140.

A wife, as to her right of support and maintenance or alimony, is as much within the statute as a creditor. She may be regarded as a *quasi* creditor, or one of the "others" mentioned in the statute. Draper v. Draper, 68 Ill. 17. See also Nix v. Nix, 10 Heisk. 546; Livermore v. Boutelle, 11 Gray, 290; Lonsdale Estate, 28 Pa. St. 413.

Courts of equity will always refuse a decree for specific performance when the contract is fraudulent. 1 Pomeroy Eq. 400; Bump Fraud. Con. 447; Waterman Specific Per., 340; Wait Fraud. Con. 521; Taylor v. Merrill, 55 Ill. 52; Tamm v. Lavalle, 92 Ill. 263.

MORAN, P. J. The appellant, William A. Tyler, in May, 1885, and when he was about sixty-four years of age, married for his second wife a lady who was less than half his age. The marriage took place in the State of New York and the parties thereto resided there until the final separation between them. Appellant was the owner of a large amount of property, consisting of notes and mortgages and some real estate, which latter was situated in the State of New York. Shortly

after the marriage differences arose between appellant and his wife and it became apparent that they would not be able to continue to live together, and appellant was afraid that his wife would commence legal proceedings against him for support. Under the influence of this fear, that his property would be subjected to the demands of his wife, he sought the aid and confidence of his son, the appellee, and on the 27th of August, 1885, there was executed an agreement in writing between appellant and appellee, whereby there was transferred to appellee certain mortgages, securities and notes which in said agreement are particularly described and enumerated, and which amounted in the aggregate to about $80,-000. There was in said agreement a recited consideration for said transfer of $10,000 paid by said appellee, and an agreement that he would pay to appellant during the term of his natural life, the sum of $10,000 per annum in semi-annual payments, to be made only upon the consideration that said sum should be necessary for the support of appellant, and upon the personal demand of appellant, but when demanded said appellee was not to refuse payment on the ground that the sum was not necessary for support. Said instrument was signed by appellant and appellee and was left in the custody of the lawyer who drew it. A portion of the securities mentioned in it were then and there delivered to appellee and others of them subsequently.

Afterward and in the month of September, appellant procured to be conveyed to appellee certain real estate situate in the State of New York. In April, 1886, appellant filed his bill in the court below, seeking the aid of the court to compel appellee to surrender back to him the said securities transferred and to reconvey the said real estate. The bill set forth, as grounds for equitable relief in substance, that at the time the transfers and conveyances were made the appellant was in a weak state of mind, and that said conveyances and transfers were made upon the suggestion and advice and through the influence of appellee, who took advantage of appellant to procure the said transfers and conveyances, and also that by certain writings executed by appellee and delivered to appellant,

appellee constituted himself the trustee of appellant, and held for appellant the legal title to said real estate and said securities, and in and by said writings vested the beneficial and equitable title to said land and said securities in appellant.

Appellee placed his defense on a denial of the allegation that he had procured the conveyances or transfers to be made to him, or that he had taken advantage of appellant, and set up that the purpose of the said conveyances and transfers on the part of appellant, were to hinder, delay and defraud his wife, with whom he had had serious trouble, and who was at the time about to, and afterward did commence against appellant a suit for separate maintenance, and in which a decree against appellant was entered, and that the agreements to reconvey the land and to surrender back the securities were executory contracts and were secret, and part of the plan to defraud said wife of appellant, and that they did not create a trust.

The court on the hearing found that certain of the securities mentioned in the agreement between appellant and appellee had never been in fact delivered to appellee, and such were declared to be still the property of appellant, and ordered that as to such of the securities as were delivered to appellee, the court would not aid appellant by decreeing their surrender and that the court would not compel appellee to reconvey the real estate.

An examination of the evidence contained in the record, satisfies us that the learned chancellor who tried this case in the court below, was clearly right in the conclusion reached by him, that the design of the conveyances and transfers from appellant to appellee was to delay, hinder and defraud the wife of appellant in obtaining alimony and maintenance in the suit which it was apprehended she was about to commence against him; that the design to so hinder and defraud originated with appellant, and while appellee became his willing instrument in aiding the design, he did not overmaster appellant or take advantage of him, and that therefore appellant and appellee were in the matter of the conveyance of said real estate, and the transfer of said securities *in pari delicto*—equals in guilt. We will

Tyler v. Tyler.

assume (for the purposes of this case, in the view we feel compelled to take of it), but without intending to decide the point, that the court below was right in treating a transfer of property, real or personal, made to defeat or hinder a wife from obtaining support or alimony, as subject to the same rule as though the conveyance was made to hinder and defraud an ordinary creditor.

It is too well settled to need the citation of authority to support the statement, that a court of equity will not aid a grantor to recover from the grantee property conveyed for the purpose of hindering, delaying or defrauding creditors, by raising a trust, or constructing out of the transaction a trust upon the ground that the conveyance was without consideration. Neither will equity specifically perform a contract to reconvey made by the fraudulent grantee. What the parties have executed for a fraudulent purpose the court will not aid either party to disturb. What the parties have fraudulently contracted to execute, the court will refuse to compel the contractor to perform.

But while equity will not raise or create a trust, when the consideration is founded on fraud, yet where a party constitutes himself a trustee by a sufficient declaration of trust, so that the trust is complete and express, it will not permit the trustee to defeat the trust or refuse to perform it, by the suggestion that the property of which the trust is declared was delivered to him in the execution of a fraudulent purpose. In Fast v. McPherson, 9⅔ Ill. 496, this principle was applied by the Supreme Court. There Fast, the appellant, who was trustee by an express trust, set up to defeat his declaration of trust, that the property had been originally conveyed to defraud creditors, but the court said: "The same principle which would have precluded appellee from alleging that a deed absolute on its face and unaccompanied or followed by an express declaration of trust, was, in fact, held in secret trust so as to defeat or delay creditors, etc., precludes Fast from alleging, as an excuse for his breach of trust, that he executed the declaration of trust in order that creditors might be defeated or delayed. Neither party is allowed to base a right

upon an allegation of her or his own participation in the doing of an unlawful or fraudulent act." In Owens v. Owens, 23 N. J. Eq. 60, it was held that when the trust is declared by a writing executed and delivered and the estate is vested in the complainant and the object of the suit is to compel a naked trustee to convey the property held in trust to the *cestui que trust*, it will not bar the relief sought, that the conveyance to the trustee was made for the purpose of delaying and defrauding the complainant's creditors. It appears from the allegations of the bill, and from the proofs, that after appellant and appellee had executed the contract in writing, transferring the securities, and after a part of the securities mentioned therein had been delivered to appellee, appellee signed and delivered to appellant the following writing:

"CONNEAUT, O., Aug. 27, 1885.

"I, John B. Tyler, hereby agree, whenever demand is made by William A. Tyler, to surrender back to him certain personal property heretofore transferred to me, amounting to about eighty thousand one hundred dollars, by him, said William A. Tyler, together with the interest due upon the securities, and for which I bind myself and my heirs for the above amount and the said accumulated interest.

"(Signed)        JOHN B. TYLER."

Under the rule established by the cases above cited appellant's right to have the securities in said writing mentioned, depends upon the question whether said writing is to be construed as a declaration of trust, or as a mere executory contract. It may be first observed that the trust, if one is in fact created by this instrument, can not be said to be merely a voluntary trust, or one declared without valuable consideration. The transfer of the securities to appellee was without consideration, in fact, and the acknowledged receipt of them by him in this writing, is a consideration expressed. But if it were otherwise, it would make no difference, for a perfectly created trust will be carried into effect at the suit of the *cestui que trust* though without consideration.

Said Chancellor Kent in Bunn v. Winthrop, 1 Johns. Ch. 337: "Nor do I think that the want of some good or valua-

Tyler v. Tyler.

ble consideration appearing on the face of the deed ought to preclude this court from lending its assistance. There is no rule of the court against giving effect, as between the parties, to a voluntary actual transfer, by deed of a personal or chattel interest, without any consideration appearing." See also Perry on Trusts, Secs. 96–98.

Whether a trust is created or not is always a question of fact, and is usually determined by construction of the instrument which is set forth as the evidence of it, considered in connection with facts or parol declarations, and it not unfrequently becomes a question of some nicety.

Where there is a plain declaration in so many words that the property is held in trust, the question is simple and there is no room for inference, but where there must be construction the same rules govern as obtain in the interpretation of other writings, and the intent as gathered from the entire instrument will control.

No particular form of words is necessary to create a trust or to make the person declaring the trust himself a trustee. The word trust need not be used. It is a rule of equitable construction that there is no magic in particular words—any expressions which show unequivocally the intention to create a trust will have that effect. Hill on Trustees, 65; 2 Spence, Equitable Jurisdiction, 51; 1 Perry on Trusts, Sec. 82, and cases cited in those works.

We think it may be safely stated as a concurring result of all the authorities that when a person *sui juris* orally or in writing explicitly or impliedly declares that he holds personal property *in presenti* for another, such declaration constitutes him a trustee, in an express trust for such other, of the property, and in such case the beneficial interest in the property is considered as vested in the *cestui que trust*, and he is entitled to the aid of a court of chancery to enforce the trust. Looking at the writing signed by John P. Tyler and delivered by him to the appellant, in the light of the foregoing considerations, we are led to the conclusion that it must be held to be a sufficient declaration that the beneficial interest in the securities is in appellant, and that he, said John B. Tyler, is to hold

them for him and deliver them up with all interest accrued on them upon demand. The agreement is " to surrender back to him certain personal property heretofore transferred to me * * * by said William A. Tyler, together with interest due upon the sureties whenever demand is made by said William A. Tyler." There is nothing executory about this instrument except the agreement to surrender back the property. The words used are not those of one who intends to sell or transfer his own property and binds himself to do so in the future. They are the words of a bailee who acknowledges that he has received certain securities of value which he is to give back with the interest that shall accumulate thereon. The securities are not beneficially his, but have been transferred to him and he is to be charged with them, and in specie he is to surrender them back on demand and account for the interest.

The words, " and for which I bind myself and my heirs for the above amounts and the said accumulated interest," do not add to or change the signification of the writing. They amount to nothing more than an agreement to account, and such obligation would arise without the words. The agreement to surrender back, which is executory, is but an agreement to clothe the beneficial owner with the legal title and *indicia* of ownership, and if not expressed would be implied in a declaration of trust, whether of real estate or personal property, in which the *cestui que trust* was given the power to terminate the trust. The trustee has agreed to do that which, having admitted himself to be a trustee, equity will compel him to do, not by way of specifically performing a contract, but in executing the trust. There is a difference between a trust and a contract, and the one will be enforced when the other can not be. Crawford's Appeal, 61 Pa. St. 52.

Counsel for appellee are mistaken in supposing that the trust declared by this writing is a secret trust. The secret trust which the courts denounce and refuse to enforce, is not an express trust, but a trust which is attempted to be raised upon the facts. A secret trust is a constructive trust as distinguished from an expressed trust. This secret or construct-

Tyler v. Tyler.

ive trust is raised upon a conveyance which is in form absolute, and while the existence of such a trust enables creditors to avoid the conveyance, the court will not execute it in behalf of the fraudulent grantor, because equity will not construct a trust upon the basis of a fraud. The creditor can reach the property of his debtor held upon an express as well as that held on an implied or secret trust, but the difference is that equity will enforce the express trust, where well created, and that the trustee can not revoke the beneficial interest which by his own act he has vested, by setting up a fraud in which he has participated. *In pari delicto portior est conditio defendentio*, what has been executed between the parties can not be defeated or undone by the suggestion of either as against the other, of the fraud of which they were equally guilty. The evidence which supports the trust here asserted is found in the writing itself and the *cestui que trust* is not compelled to resort to the fraudulent transaction to establish his right. The writing is supported by the testimony of witnesses in the record that appellee at different times declared that he held these securities in trust for his father. Such parol declarations are admissible to establish a trust in personal property, and are competent to be considered in this case as confirming the construction which we have given to the writing.

It follows that the appellee should have been held a trustee for appellant under the complete express trust declared by him and should have been decreed to transfer, surrender and account for the securities mentioned therein.

As to the real estate situated in New York, we think the trust quite as clear, if not more clear, than that established of the personal property. It appears that appellant had conveyed to one Henry A. Sheldon, a resident of the State of New York, two farms situate in said State, and which are known to and described by the parties and witnesses in this case as the Whitney Point Farm and the John Slack Farm. Sheldon gave his note for $5,000 to appellant for the farms, but it is clear that the conveyance was not *bona fide*, but was for the purpose of placing the property beyond the reach of appel-

lant's wife in any proceeding she might bring against him· A few days after the deed to Sheldon appellee paid Sheldon the sum of $5,100 and Sheldon conveyed the property to appellee. Appellant furnished to appellee the money which appellee paid to Sheldon and with the money so received Sheldon paid his $5,000 note to appellant. After the conveyance from Sheldon to appellee, the following writing was signed by appellee and delivered to appellant.

"BINGHAMTON, N. Y., September 11, 1885.

" I have received the value of the lands this day deeded to me by Henry A. Sheldon and wife, of William A. Tyler, and I bind myself, heirs and assigns, to give him as good title on demand as I received, for value received.

"J. B. TYLER."

This is a plain acknowledgment that appellee holds the legal title of said lands for appellant. The value of the lands is admitted to have been received from appellant, and this can only be construed as an admission that the beneficial interest in the land is in appellant, formal words or technical terms being unnecessary in such an instrument. Any words which sufficiently declare the trust will vest the equitable title. It is unnecessary to repeat here the considerations or the citations to the authorities which led us to the conclusion that the writing referring to the securities declared an express trust. The same principles of construction apply to trusts of real estate that apply to trusts of personalty, save only that a trust of real estate can only be evidenced or manifested by a writing, while that of personalty may be declared by parol. When, however, a trust of either the one or the other is declared, the equitable interest in the property is at once vested in the *cestui que trust*. Equity regards only the beneficial estate, the equitable title, and it is believed that no case can be found when equity has refused to execute a trust actually declared and vested.

We have already seen that the court will not refuse to enforce such a trust for the reason that the conveyance to the trustee, who has declared the trust, was for the fraudulent purpose of hindering or delaying creditors.

Tyler v. Tyler.

The view we have taken in this case is one that courts have seldom had occasion to announce, because the discussion of trusts connected with conveyances made to defraud creditors have generally related to the secret or constructive trusts which, as a badge of fraud, aids the creditor to avoid the conveyance and allows the perfidious friend or relative to retain the fruit of the fraud in which he has participated, as against his *particeps criminis.*  While we do not question the wisdom of this rule, which is firmly established in this State, it must be admitted that it has frequently operated to sustain double fraud.  The "greed of mammon" which has induced the trusted friend or the favorite son to cruelly abuse and outrage the confidence reposed, and to disappoint the hope by the basest moral treachery, must, under such rule, be satiated, and the false friend be allowed to retain the ill-gotten portion.

We confess that we apply to the facts of this case with considerable judicial satisfaction a well established rule of equity, which will operate to defeat the attempted treachery of this son toward his father.

The decree of the Superior Court will be reversed and the cause remanded with directions to enter a decree requiring the said appellee to surrender, transfer and set over to appellant, and to fully account to him for all securities referred to him in said declaration of trust, bearing date August 27, 1885, and also requiring said appellee to convey by proper deed to appellant, the legal title to the said land situate in the State of New York and referred to in the declaration of trust dated September 11, 1885, and signed by said appellee.

*Reversed and remanded.*